# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE No: 1:13-cr-000146-AWI-BAM-1 |
| Plaintiff | **ORDER ON MOTION FOR COMPASSIONATE RELEASE** |
| v. | |
| ROBERT ARON SPRENKLE, | (Doc. No. 43) |
| Defendant | |

Defendant Robert Aron Sprenkle, who is currently serving a 120 month sentence at FCI Coleman Low filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the grounds of elevated COVID-19 risk due to his obesity, sleep apnea and pre-diabetic condition. 0 Doc. No. 43. For the reasons set forth below, the Court will deny the motion.

## **BACKGROUND**

On June 23, 2014, Sprenkle plead guilty to receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Doc. Nos. 1 and 23. On September 15, 2014, he was sentenced to 120 months in the custody of the Bureau of Prison (BOP), Doc. Nos. 28-30, and he is currently incarcerated at FCI Coleman Low with a projected release date of November 13, 2022. Doc. No. 43-1.

Sprenkle's medical records show that he is 6 feet 3 inches tall and weighed 292 pounds as of May 7, 2020, indicating a body mass index—or BMI—of 36.5. Doc. No. 43 at 6.[1] Further,

---

[1] Page citations to records on the Court's electronic docket are to the page number in the CM/ECF stamp at the top of each page.

Sprenkle contends that he is pre-diabetic, and medical records show he suffers from moderate obstructive sleep apnea, for which he uses a CPAP machine while sleeping. Id. at 4:6-9.

Sprenkle is assigned to a 48-square-foot cubicle demarcated by partial, 4.5-foot walls that he shares with two other inmates in a crowded dormitory that houses a total of 170 inmates. Doc. No. 43-9. The cubicle is only designed for two inmates, has no table for eating, and cannot be closed off from the rest of the dormitory. Id. Sprenkle sleeps in close proximity to other inmates and is unable to store and maintain his CPAP in a sanitary fashion. Id.

Sprenkle made two requests for compassionate release to the warden of the FCI Coleman Low facility. The first request was denied on June 17, 2020. Doc. No. 43-2 at 2. The second request was received by the warden on July 28, 2020 and denied on August 5, 2020. Id. at 3. In both cases, Sprenkle was informed that he could appeal the denial by filing a specified form with the BOP within 20 days. Id. at 2-3.

Sprenkle filed the instant motion seeking compassionate release with this Court on October 21, 2020. Doc. No. 43.

## DEFENDANT'S MOTION

*Defendant's Arguments*

Sprenkle argues that his "underlying health conditions"—obesity, sleep apnea and being pre-diabetic—collectively increase the risk of a "poor outcome" if he contracts COVID-19. Doc. No. 43 at 4:21-28. In addition, he argues that his chances of COVID-19 infection are greatly increased because, *inter alia*: (i) social distancing is impossible in his crowded cubicle and dormitory; (ii) prison conditions are unsanitary due to lockdown, infrequent laundering and a lack of cleaning supplies; and (iii) he cannot maintain his CPAP properly. Doc. No. 43-9. He further asserts that FCI Coleman Low "was at the top of the federal prison list for COVID-19 infection" in August 2020 and that regardless of any subsequent dips, infection rates could "surge again." Doc. No. 43 at 4:24-28. Finally, he argues that he is an appropriate candidate for compassionate release because he has already served approximately ¾ of his sentence and has had no disciplinary problems in prison. Id. at 8:19-9:13.

According to Sprenkle, this Court has jurisdiction over this motion because more than 30

days have elapsed since he submitted his requests for release to his warden. Doc. No. 43 at 2:20-26.

*United States' Opposition*

The United States does not dispute that this Court has jurisdiction over Sprenkle's motion but argues that obesity is Sprenkle's only significant risk factor and that release on that basis is unwarranted because, *inter alia*: (i) BOP has gotten better at managing COVID-19 in prison environments; (ii) infection rates at FCI Coleman are currently low; (iii) Sprenkle is getting adequate medical care for his conditions in prison; (iv) Sprenkle has not completed a sufficient amount of his sentence; and (v) Sprenkle remains a threat to the community as a sex offender. Doc. No. 47.

## **LEGAL FRAMEWORK**

A court may generally "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 819 (2010). Criminal defendants may request compassionate release or sentence modifications, however, for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020).

The statutory basis for compassionate release is set forth in 18 U.S.C. § 3582(c), which states in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> 
> (1) in any case—
> 
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
> 
> (i) extraordinary and compelling reasons warrant such a reduction ....

3

18 U.S.C. § 3582(c)(1)(A)(i).

Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances … defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also, United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) ("A defendant who has not 'requested compassionate release from the [BOP] or otherwise exhausted his administrative remedies' is not entitled to a reduction of his term of imprisonment.").

The failure to exhaust administrative remedies as mandated by 18 U.S.C. § 3582(c)(1)(A) is a jurisdictional failure. See Gallo Cattle Co. v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); United States v. Greenlove, 469 F. Supp. 3d 341, 344 (M.D. Pa. 2020); United States v. Howard, 2020 WL 3513938, at *2 (E.D. Cal. June 29, 2020) (Ishii, J.).

"The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction," United States v. Greenhut, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)), and to show that the statutory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied. See United States v. Addison, 2020 WL 4601637, at *2 (E.D. La. Aug. 11, 2020); United States v. Van Sickle, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (and cases cited therein).

## DISCUSSION

After review, the Court will deny the motion for two reasons.

First, while recognizing differing views on this issue,[2] this Court reads 18 U.S.C. § 3582(c)(1)(A) to mean that a defendant must exhaust BOP appeals prior to bringing a motion for compassionate release in district court where a warden denies a request for compassionate release within 30 days of receipt, and that a defendant may only come to court for relief without first exhausting BOP appeals where the warden fails to respond to the request within 30 days of receipt. See Greenlove, 469 F. Supp. 3d at 348; United States v. Ng Lap Seng, 459 F. Supp. 3d

---

[2] See e.g., United States v. Ezukanma, 2020 WL 4569067, *4-*6 (N.D. Tex. Aug. 6, 2020) (holding that there is exhaustion for purposes of 18 U.S.C. § 3582(c)(1)(A) as long as 30 days lapse from the date the warden receives a request for compassionate release, regardless of what action, if any, the warden takes in response to the request); United States v. Kesoyan, 2020 WL 2039028, *3 (E.D. Cal. Apr. 28, 2020) (Mendez, J.) (similar).

4

527, 536 (S.D.N.Y. 2020); United States v. Opoku, 2020 WL 3404735, *2 (S.D. Miss. June 19, 2020).

      Sprenkle and the United States appear to be of the view that merely waiting 30 days from a warden's receipt of a request for compassionate release is sufficient, regardless of whether or how a warden responds. Under that view, however, an inmate would never have a reason to exhaust his administrative remedies, since it is unlikely "in the normal case" that an inmate could do so in less than 30 days. Cf. Seng, 459 F. Supp. 3d at 536. Further, interpreting 18 U.S.C. § 3582(c)(1)(A) to require inmates to appeal a timely denial of release request through BOP channels before going to court is consistent with the recognized congressional intent to speed up the compassionate release process, by guaranteeing that action of some sort is taken within 30 days from receipt of a request. See id. If a warden does not act in 30 days, the administrative process is essentially deemed exhausted, and the prisoner may then proceed directly to court. If on the other hand, the warden wishes to deny (or grant) the request, the warden must do so—and trigger the BOP appeals process (the filing of a motion on a prisoner's behalf)—within 30 days. Under either scenario, the request is not allowed to languish and the compassionate release process advances significantly within a relatively brief period. In short, 18 U.S.C. § 3582(c)(1)(A) is best read, in the Court's view, to create a 30-day deadline for the BOP to act on a compassionate release request, and the Court will apply the statute accordingly.

      Here, Sprenkle admits that both of the requests he made to his warden for compassionate release were denied, with no allegation—let alone any showing—that the denials came after the 30-day window in 18 U.S.C. § 3582(c)(1)(A) had expired. Indeed, the record shows that the second request was denied within about a week of receipt of the request.[3] As such, Sprenkle has failed to meet his burden to show exhaustion under 18 U.S.C. § 3582(c)(1)(A), see Addison, 2020 WL 4601637 at *2, and the Court lacks jurisdiction to grant the relief Sprenkle is seeking. See Gallo Cattle, 159 F.3d at 1197; Greenlove, 2020 WL 3547069 at *5-*6.

---

[3] This scenario involving swift denial of a request for compassionate release reinforces the Court's view as to the proper interpretation of 18 U.S.C. § 3582(c)(1)(A). If there were no expectation that an inmate appeal a warden's timely denial of a compassionate release request through BOP channels, why should an inmate who receives an immediate denial from his warden have to idle for several weeks before going to court?

Second, and in the alternative, the Court sees that, as of the date of this Order, there are zero inmate COVID-19 infection at Coleman Low FCI. See https://www.bop.gov/coronavirus/ (last checked December 21, 2020). It appears that infection rates at Coleman Low FCI were once much higher, but current data indicates that new BOP protocols with respect to COVID-19 have been effective with respect to inmates in Sprenkle's facility and precludes a finding that "extraordinary or compelling reasons" justify compassionate release based on COVID-19 risk in this case, regardless of Sprenkle's other medical conditions. See Alam, 960 F.3d at 832.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Robert Sprenkle's motion for compassionate release (Doc. No. 43) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   December 21, 2020              _____
                                         SENIOR DISTRICT JUDGE